THE MAYOR AND COMMON COUNCIL OF NEWARK v. THE
STATE BOARD OF EQUALIZATION OF TAXES OF NEW
JERSEY AND THE PRUDENTIAL INSURANCE COM-
PANY OF AMERICA.

Argued November 21, 1910—Decided March 6, 1911.

1. In compliance with the mandate of chapter 71 of the laws of
   1907 the Prudential Insurance Company of America apportioned
   to certain of the policies which it had issued, and which by their
   terms were entitled to participate in the company's profits or sur-
   plus, the sum of $14,623,279.37, and carried that amount as a
   distinct and separate liability to such policies.
2. The General Tax law of the state provided that domestic life
   insurance companies should be taxed upon the full amount or
   value of their property, after deducting (among other items)
   the amount of their debts and liabilities; and that in deducting
   the liabilities on policies the computation of their value made by
   the commissioner of banking and insurance should be adopted.
   The value of the company's policies as calculated by that officer
   was $132,138,211.
3. In the determination by the tax officers of Newark of the amount
   or value of the company's property which was subject to taxation
   the company claimed that there should be deducted as its liability
   on its policies not only the amount computed as their value by
   the commissioner of banking and insurance but also that part of
   its surplus which it had apportioned to policies issued by it, as
   required by chapter 71 of the laws of 1907. *Held*, that the
   Newark taxing officers properly treated the amount of the value
   of the company's policies as computed by the commissioner of
   banking and insurance as the only sum which the company was
   entitled to have deducted from its assets on account of its policy
   liabilities in the determination of the extent to which its property
   and assets were subject to taxation.

On error to the Supreme Court, whose opinion is reported
in 51 *Vroom* 258.

By a supplement to the General Tax act of the state, ap-
proved May 11th, 1906 (*Pamph. L., p.* 418), it is enacted
that "Associations or corporations of this state whose busi-
ness is that of the assurance on lives shall be assessed and taxed

upon the full amount or value of their property (exclusive of real estate situate in this state, and exclusive of securities to the value of five hundred thousand dollars), deducting from such amount or value the amount of their debts and liabilities; to ascertain the said amount a statement of the amount or value of the property and of the debts and liabilities of such association or corporation as they existed on the thirty-first day of December next preceding such statement shall be annually made to the assessor or taxing officer or officers in the township, city or taxing district where the principal office of the association or corporation is located, upon the oath of the president, secretary or treasurer, or other officer of such association or corporation; in stating the liabilities on policies the basis of such statement shall be the value of such policies at the date above mentioned in this section and not the gross amount insured thereby, and such value shall be according to the computation of the same by the commissioner of banking and insurance of this state by such standard of valuation as may be adopted and used by him at the time such computation shall be made according to law; the real estate of such corporation shall be separately assessed and taxed where the same is located, and no tax shall be assessed against such association or corporation on personal property in any other taxing district; in ascertaining the tax imposed by virtue of this act no deduction shall be made for non-taxable or exempt securities, but deductions shall be made of the real estate located in this state according to the amount of the same contained in the statement of the amount of value of property above mentioned, and such real estate shall be assessed and taxed in the taxing district where the same is located," &c., &c.

Pursuant to the requirement of this statutory provision the Prudential Insurance Company of America, in May, 1909, presented to the proper taxing officers of the city of Newark (the company's principal office being there located) the following statement of the amount or value of its property, and of its debts and liabilities, as they existed on the 31st day of December, 1908:

| | |
|---|---|
| Property and valuable assets.... | $174,105,708 17 |

Deductions are claimed for the following:

| | |
|---|---|
| Debts and liabilities, reserves on policies (N. J. Commissioner of Banking and Insurance valuation) .................. | $132,138,211 00 |
| Dividends payable in 1909...... | 294,054 73 |
| Amount apportioned to deferred dividend policies as required by ch. 71, laws 1907, N. J... | 14,623,279 37 |
| Miscellaneous debts and liabilities ..................... | 3,807,486 38 |
| | $150,863,031 48 |
| Real estate owned by the company situated in the State of New Jersey and included in said total amount of assets.. | $11,450,092 78 |
| A further deduction is claimed on account of securities under ch. 218, laws of 1906, of.... | 500,000 00 |
| Making a total deduction from the property and valuable assets of .................... | 162,813,124 26 |
| Balance subject to taxation..... | $11,292,583 91 |

The taxing authorities of Newark, conceiving that the item "Amount apportioned to deferred dividend policies as required by ch. 71, laws of 1907, N. J., $14,623,279.37," deducted in the statement as a liability, was not a liability of the company for which it was entitled to credit under the Tax act of 1906, assessed and taxed this sum of money in addition to the balance of $11,292,583.91 reported by the company in its statement as the amount or value of its property subject to taxation. The validity of this action of the taxing authorities having been first passed upon by the county board of taxa-

tion, and afterward by the state board of equalization of taxes, was finally reviewed on *certiorari* by the Supreme Court. The judgment of that tribunal was that the company was not entitled to a deduction from the amount or value of its property of this sum apportioned by it to deferred dividend policies, and that the action of the Newark taxing authorities was in all respects proper. The present writ of error challenges the validity of that judgment.

For the plaintiffs in error, *Richard V. Lindabury* and *Edward D. Duffield.*

For the defendants in error, *Herbert Boggs* and *Samuel Kalisch.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The statement made by the Prudential Insurance Company of America to the taxing authorities of the city of Newark shows that the sum of $14,623,279.37 was apportioned by it to deferred dividend policies pursuant to the requirements of chapter 71 of the laws of 1907. *Pamph. L., p.* 132. The act referred to provides that "every domestic life insurance company doing business in this state, conducted on the mutual plan or in which policyholders are by the terms of their policies entitled to share in the profits or surplus shall, on all policies of life insurance heretofore or hereafter issued, under the conditions of which the distribution of surplus is deferred to a fixed or specified time and contingent upon the policy being in force and the insured living at that time, annually ascertain the amount of surplus to which all such policies as a separate class are entitled, and shall annually apportion to such policies as a class the amount of the surplus so ascertained, and carry the amount of such apportioned surplus, plus the actual interest earnings and accretions of such fund, as a distinct and separate liability to such class of policies on and for which the same was accumulated, and no company or any of its officers shall be permitted to use any part of such appor-

tioned surplus fund for any purpose whatsoever other than for the express purpose for which the same was accumulated."

It is apparent, from a reading of this statute, in connection with the item in the company's statement which has been cited, that this sum which has been apportioned to deferred dividend policies is a part of the profits or surplus made by the company in the conduct of its business; in other words, a part of its assets or property. By setting aside this fund, in pursuance of the mandate of the act of 1907, the company has declared (and indeed their counsel expressly so state in their brief) that, by the terms of policies which it has written, the holders thereof are entitled to share in its profits or surplus to the extent shown by the apportionment. This being so, it is manifest that the liability to pay to the holders of these policies, or their beneficiaries, the sum so apportioned arises, not from the act of apportionment, but from the contract contained in the policies. The statute is based upon the existence of this fact. There is no suggestion in it of an attempt to create a liability not theretofore existing. On the contrary, it expressly deals with a liability created by the company itself to pay the holders of its policies, or their beneficiaries, a part of its surplus or profits, and requires that the amount of that liability shall be ascertained annually, and, after having been so ascertained, shall be set aside and carried, with its interest earnings and accretions, as a distinct and separate liability to these policies. Obviously, the single purpose of the statute is to make more certain the ability of the company to meet this liability to its policyholders when the time arrives for distribution among them or their beneficiaries of the share in the surplus or profits to which their policies entitle them.

The liability of the company to pay to its policyholders, or their beneficiaries, this fund, apportioned and segregated from its other assets, being created, not by the act of 1907, but by the contracts contained in the policies written by it, is it entitled to have the amount of this liability deducted from the total value of its property by virtue of the provision

of the supplement to the Tax act of 1906? That act requires that the company "shall be assessed and taxed upon the full amount or value of its property, * * * deducting from such amount or value the amount of its debts and liabilities." It then requires—in order that the taxing officers may properly perform their duty—that the company shall make a statement to those officers of the amount or value of its property, and of its debts and liabilities; but that "in stating its liabilities on policies the basis of such statement shall be the value of such policies * * * according to the computation of the same by the commissioner of banking and insurance." By this latter provision, as we understand it, the legislature has arbitrarily fixed the amount of deduction to be allowed to a life insurance company on account of its liability on its policies; and has declared that the value of those policies as computed by the commissioner of banking and insurance shall be the sum to be deducted. This seems to us clear. But even if it was not so—if it was doubtful whether or not this was the legislative intent—we should, nevertheless, feel compelled to so construe it. The right given by the statute, to the company, to deduct from the amount or value of its property the amount of its liability on its policies, is, in its essence, a grant of exemption from taxation; and it is a fundamental rule in the law of taxation that such grants will never be permitted to extend, in scope, beyond what the terms of the concession clearly require, and that all doubts as to the scope of the exemption must be resolved in favor of the state.

If, then, the liability to pay to the policyholders of the company, or their beneficiaries, this $14,623,279.37 is a "liability on policies." the taxing officers of the city of Newark were entirely right in refusing to allow its deduction in addition to the value of the company's policies as computed by the commissioner of banking and insurance. That it was so considered by the legislature is manifest from the mandate of the act of 1907 that the amount of the surplus apportioned to deferred dividend policies shall be carried as *a liability to such class of policies*. That such is its character in fact we have no doubt. A liability on a policy is an obligation on the

part of the insurer to pay to the insured, or its beneficiary, the moneys which the policy calls for, provided the insured on his part complies with all those conditions of the policy which are binding upon him. Whether the sum to be paid under the contract is a fixed amount to be neither added to or diminished, or whether it be a sum stated, plus a part of the profits which the insurer realizes from the conduct of his business, the obligation to pay it is equally a "liability on the policy."

It appears from the proofs in the cause that the commissioner of banking and insurance, in computing the value of the defendant company's policies, did not take into account this fund apportioned to deferred dividend policies, and we are told that had this been done the total liability of the company upon its policies would have been increased by the amount of this fund. It is not clear to us how the mere setting aside and segregation of this fund from the general mass of the company's assets has operated to increase the amount of the company's liability on its policies; but, conceding this to be the fact, we are, nevertheless, of opinion that the action of the Newark taxing officers in refusing to permit the deduction of this sum of money from the total value of the company's property was in strict performance of the duty imposed upon them by the statute. The mandate of the legislature is that the taxing officers, in allowing a deduction to the company for liability on its policies, shall take the value thereof as computed by the commissioner of banking and insurance. No supervisory power over that computation is vested in the taxing officers; they are bound to accept it as made. If the commissioner has erroneously computed that value, either by the adoption of an erroneous principle, or by failing to take into consideration items which go to make it up, and his error results in injury to the company, the only remedy of the aggrieved party, in the event of the refusal of the commissioner to correct his mistake, is by a direct attack upon the accuracy of the computation in the Supreme Court. So long as the commissioner's computation stands it must be accepted as final by the taxing officers.

The judgment of the Supreme Court will be affirmed.

*52 Vroom.* Amer. Heating, &c., Co. v. B'd of Education.

*For affirmance*— THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, REED, TRENCHARD, PARKER, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ. 11.

*For reversal*—None.